# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH HILLARD,<br>  Plaintiff | : | No. 3:08cv905 |
| | : | |
| v. | : | (Judge Munley) |
| | : | |
| PRUDENTIAL INSURANCE<br>COMPANY OF AMERICA,<br>  Defendant | : | |

## MEMORANDUM

Before the court is the defendant's motion for summary judgment in this case involving the denial of disability insurance benefits. The parties have briefed their respective positions, and oral argument has been held. The matter is thus ripe for disposition.

**Background**

The underlying facts are generally not in dispute. Plaintiff Joseph Hillard is an employee of Smith Group Services Corp., a/k/a Smith Aerospace. Plaintiff was injured in a car accident on January 22, 2007. This accident caused him to be disabled from performing his job due to neck pain, shoulder pain and headaches.

He sought disability insurance benefits through a group insurance policy issued by Defendant Prudential Insurance Company of America, (hereinafter "Prudential" or "defendant"), which included both short and long-term disability plans. These plans fall under the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA").

Beginning on January 23, 2007, plaintiff began receiving short-term disability benefits. He was notified, however, that the benefits would end on June 11, 2007. (Doc. 1, Complaint ¶ 12). Plaintiff appealed the defendant's decision to terminate his short-term disability benefits. (Id. ¶ 13). The plaintiff periodically provided additional medical evidence in support of his appeal through March 10, 1998. (Id. ¶ 14).

On April 9, 2008, the defendant denied plaintiff's appeal of the decision to terminate his short-term disability benefits. (Id. ¶ 16). Plaintiff asserts that his treating physicians never released him to work in any capacity during the pendency of this appeal. (Id. ¶ 15).

Plaintiff subsequently instituted the instant two-count action. The complaint contains the following two causes of action: Count I, Enforcement of benefits under the Employee Retirement Income Security Act of 1974 (ERISA); and Count II, Bad Faith pursuant to 42 PENN. CONS. STAT. ANN. § 8371. At the close of discovery the defendant filed the instant motion for summary judgment.

**Jurisdiction**

We have jurisdiction over this matter pursuant to 29 U.S.C.1132(e)(1) (providing for jurisdiction in United States District Courts over claims for benefits under ERISA).

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must

examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

The standard of review for an action brought under section 1132(a)(1)(B) of ERISA is not set forth in the statute. The United States Supreme Court has held that courts should ordinarily apply a *de novo* standard of review in assessing a plan administrator's denial of ERISA benefits. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). However, where the ERISA plan commits discretion to the plan administrator or fiduciary, as it does in the instant case, a deferential abuse of discretion standard is applied. Estate of Schwing v. The Lily Health Plan, 562 F.3d 522, 525 (3d Cir. 2009). Under the abuse of discretion standard we may overturn a decision only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.

Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993).

Where the plan administrator is acting under a conflict of interest, we take that conflict of interest into consideration as one of several factors in determining whether the administrator or fiduciary abused its discretion. Id.

**Discussion**

Defendant contends that its decision to deny benefits is not an abuse of discretion because it had a Board Certified Neurologist and a Neuropsychologist and other medical professionals review plaintiff's medical records and file and determined that plaintiff was not disabled from performing his job. Plaintiff argues that too many issues of fact exist as to whether the defendant's decision is an abuse of discretion. Accordingly, we must examine the review defendant provided to plaintiff's claim.

Under the policy an employee is disabled with regard to short term disability benefits "when Prudential determines that [the employee is] unable to perform the material and substantial duties of [his] regular occupation due to [his] sickness or injury" and "[the employee has] a 20% or more loss in weekly earnings due to the same sickness or injury." (Defendant's Statement of Material Facts, (hereinafter "SOF"), ¶ 8)[1]. This same standard applies to long term disability benefits until twenty-four (24) months of payments have been paid. After twenty-four months of payments, an employee is entitled to long disability benefits "when Prudential determines that due to the same sickness or injury, [the

---

[1]For these facts we will cite to the defendant's statement of material facts as they are generally admitted by the plaintiff. We will note where the plaintiff disagrees.

4

employee is] unable to perform the duties of any gainful occupation for which [they] are reasonably fitted education, training or experience." (Id. at ¶ 9).

In February 2007, Smith Aerospace, plaintiff's employer, submitted an application for short-term benefits under the group policy on behalf of plaintiff. (Id. at ¶ 13). The application included an Attending Physician's statement from David Mouallem, D.O., indicating that plaintiff could not work due to severe pain to his left shoulder with some numbness in left hand/upper extremity and headaches. (Id.). The statement also indicated that the prognosis for plaintiff's return to work was good and set a target return to work date as February 12, 2007. (Id.). Dr. Mouallem had treated the plaintiff the day after the motor vehicle accident. He diagnosed plaintiff with tension headache and cervical strain. He referred plaintiff for an MRI of the neck and back. (Id. at ¶ 14).

Defendant paid benefits to plaintiff from January 24, 2007 through June 11, 2007. Defendant informed plaintiff that for benefits to continue past June 11, 2007, he was required to submit medical information supporting his continued disability by June 15, 2007. Plaintiff did not provide the information and his short term benefits were terminated. (Id. at ¶ 18). Plaintiff appealed this denial and submitted medical records in support of the appeal.

Medical records from the following healthcare providers were included:

**1. David Mouallem, D.O.**, who was plaintiffs' attending physician after the accident. (SOF ¶ 14). He initially diagnosed plaintiff with tension headache and cervical strain. He originally indicated that plaintiff should

be able to return to work on February 12, 2007. (Id. at ¶ 13). He referred plaintiff for an MRI of the neck and brain. (Id. at 14). Plaintiff continued to see Dr. Mouallem through subsequent months and continued to complain of headaches, shoulder and neck pain. (Id. at ¶¶ 15 - 17). In August 2007, Dr. Mouallem was still treating the plaintiff who was complaining of neck pain, right arm numbness, memory problems and anxiety. (Id. at ¶ 34). Dr. Mouallem's diagnosis was cervical strain/sprain, possible post concussion syndrome with memory loss, hearing loss and cervical radiculopathy. (Id.). Dr. Mouallem provided plaintiff with notes asking him to be excused from work due to an acute medical condition up through December 1, 2007. (Id. at ¶ 35).

**2) Kenneth W. Lilik, M.D.**, a neurologist who also examined the plaintiff. He examined the plaintiff on June 11, 2007 and diagnosed him with post traumatic muscular contraction headaches, subjective memory dysfunction, post traumatic cervical strain and suspected cervical radiculopathy, suspected mild post traumatic concussion and degenerative disease of the spine. (Id. ¶ at 20). Plaintiff visited Dr. Lilik again in August 2007. He complained of neck pain extending into both shoulders and posterior aspect of the right arm into the dorsal right forearm. Dr. Lilik concluded that plaintiff suffered from old or chronic mild right C6 and suspected left C6 radiculopathy and mild bilateral median neuropathies at the wrists, right worse than left, degenerative disease of the spine, post traumatic muscular contraction headaches and post traumatic memory, emotional and cognitive dysfunction. (Id. at ¶ 31). Dr. Lilik prescribed Naprosyn for the neck pain, and Trileptal to reduce neuropathic pain. He also recommended that plaintiff obtain hearing aids as soon as possible.

(Id. at ¶ 31). He further recommended that plaintiff visit a psychiatrist for anti-depressant medication and a psychologist for counseling and cognitive training. (Id. at ¶ 32).

**3) Michael J. Raymond, PhD**, a forensic neuropsychologist who interviewed the plaintiff on June 29, 2007. (Id. at ¶ 23). Plaintiff had been referred to Dr. Raymond by Dr. Lilik for neuropsychological testing. (Id. at ¶ 22). Dr. Raymond noted that plaintiff suffered from ongoing adjustment difficulties marked by depression, frustration and irritability. (Id. at ¶ 24). He concluded plaintiff presented with agitated depression manifested with unusual thought processes and social withdrawal. (Id. at ¶ 24). Dr. Raymond indicated that plaintiff remained independent in the activities of daily living. He was able to remain home independently, participate in household chores, socialize, operate an automobile and manage daily finances. (Id. at ¶ 26). Dr. Raymond recommended that plaintiff continue to see his doctors and undergo a SPECT scan or a PET scan to assess the potential for metabolic changes. He also recommended that plaintiff see an ENT to assess his auditory acuity and supportive psychotherapy. (Id. at ¶ 27). Plaintiff did not visit an ENT or undergo a SPECT or PET scan as recommended by Dr. Raymond. (Id. at ¶ 38).

Dr. Raymond re-evaluated the plaintiff in January 2008. (Id. at ¶ 40). He concluded that the results of plaintiff's evaluation were essentially unchanged. (Id. at ¶ 41). He diagnosed plaintiff with post-concussion secondary to a motor vehicle accident and that other etiologies including cerebrovascular disease should be ruled out. (Id. at ¶ 43). He further indicated that plaintiff remained disabled from full-time gainful employment. (Id. at ¶ 44).

**4) Matthew A. Berger, M.D.**, a psychiatrist who examined the plaintiff on September 19, 2007. (Id. at ¶ 33). Dr. Berger diagnosed plaintiff with Adjustment Reaction with mixed emotional features and discussed coping with depression. (Id. at ¶ 33). He recommended antidepressant medications but plaintiff preferred to first submit to therapy without the medication. (Doc. 18-6, Administrative Record at 70). Plaintiff continued to treat with Dr. Berger a few times a week. (Id. at ¶ 38).

The defendant received these medical records from the plaintiff and performed a review of plaintiff's claim for disability benefits. Pursuant to the review, the defendant decided to deny benefits. Several different individuals took part in the review. First, in September 28, 2007, a registered nurse reviewed the records of Dr. Mouallem and Dr. Lilik, both medical doctors. The registered nurse, although he never examined the plaintiff, concluded that plaintiff was well beyond the normal durations for his diagnosis. He further concluded that plaintiff suffers from subjective complaints that are not supported by diagnostic testing and exams. He concluded that "[t]here does not appear to be a severity of symptoms or a loss of function that would prevent [plaintiff] from performing [the duties of his occupation] as of 6/12/07." (Doc. 18-8, Administrative Record at 210-11).

Next, Melyvn Attfield, PhD reviewed only one record, the Neuropsychological Consultation dated July 2007 performed by Dr. Raymond. Attfield determined that the information provided by Dr. Raymond failed to provide valid information that would support impairment of the severity to preclude occupational function. (Doc. 18-8, Administrative Record at 214).

8

On March 9, 2008, Scott R. Millis, PhD, MEd, ABPP, a clinical neuropsychologist, filed a report opining only on the neuropsychological and psychological aspects of the case. Dr. Millis concluded that there was insufficient documentation in this case to substantiate the presence of disabling cognitive impairment. (Doc. 18-6, Administrative Record at 47). In coming to this conclusion, Millis did not examine the plaintiff, but rather reviewed the records of those providing treatment to the plaintiff.

The final report used by defendant to justify the denial of benefits was drafted by Douglas T. Brown, M.D., board certified in neurology. This report is dated April 7, 2008. It appears that Dr. Brown reviewed records from Dr. Lilik and Dr. Berger. Brown concluded that there was no evidence of a functional impairment. (Doc. 18-6, Administrative Record at 10-13). He concluded that plaintiff did not have a neurological functional impairment or combination of conditions from January 24, 2007, forward. (Id. at 13).

Notably it appears that the records of Dr. Mouallem were evidently not reviewed by Brown, or at least they were not discussed by him in his report. Mouallem, plaintiff's treating physician, wrote notes to excuse plaintiff from work up through December 2007 due to an acute medical condition. This conflicts with Brown's conclusion that plaintiff had no such impairment from January 24, 2007 onward. The report also does not mention Dr. Raymond's January 2008 conclusion that plaintiff remained disabled from working. As with the others who performed the review for defendant, Brown did not examine the plaintiff, but merely reviewed the records.

Defendant argues that based upon this evidence summary judgment

9

in their favor is appropriate because a thorough review of plaintiff's medical records was made by the highly qualified Board Certified Neurologist and Neuropsychologist that supported their decision to discontinue short-term benefits and deny long-term benefits. We are unconvinced by the defendant's argument. Although they assert that a thorough review was made of all records, Dr. Brown's report does not mention any of Dr. Mouallem's record, specifically Dr. Mouallem's opinion that plaintiff was unable to work due to an acute medical condition.[2] This fact is important because plaintiff treated for Mouallem since right after the accident. Accordingly, we cannot grant summary judgment for the defendant on plaintiff's ERISA claim.[3]

**II. Bad Faith**

Defendant also argues that Count II of the complaint asserting a cause of action for bad faith under Pennsylvania law should be dismissed as it is pre-empted by ERISA. We agree. According to the Third Circuit Court of Appeals, a claim for bad faith under Pennsylvania state law is pre-empted by ERISA. Barber v. UNUM Life Ins. Co., 383 F.3d 134, 140-41 (3d Cir. 2004). Accordingly, the plaintiff's bad faith claim will be dismissed.

**Conclusion**

---

[2] Millis's report indicates that he reviewed Mouallem's records. Millis, however, limited his opinion to the neuropsychological and psychologist aspects of the case. Mouallem did not provide this type of care to the plaintiff, but rather referred him to Kenneth Lilik, M.D. for neuropsychological issues.

[3] Plaintiff did not file a cross motion for summary judgment, but rather requests that the case proceed to trial. Accordingly, we cannot grant judgment to the plaintiff at this time and conclude our analysis at this point. The case will proceed to a pretrial conference.

Defendants motion for summary judgment will be granted with respect to the bad faith cause of action and denied in all other respects. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH HILLARD,<br>　　　　　**Plaintiff** | : | No. 3:08cv905 |
| | : | |
| v. | : | (Judge Munley) |
| | : | |
| PRUDENTIAL INSURANCE<br>COMPANY OF AMERICA,<br>　　　　　**Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

　　**AND NOW**, to wit, this 18th day of September 2009, the defendant's motion for summary judgment (Doc. 18) is hereby **GRANTED** with respect to the Bad Faith cause of action and **DENIED** in all other respects.

　　　　　　　　　　　　　　**BY THE COURT:**

　　　　　　　　　　　　　　**s/ James M. Munley**
　　　　　　　　　　　　　　**JUDGE JAMES M. MUNLEY**
　　　　　　　　　　　　　　**United States District Court**